**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELVIRA HERNANDEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>  Defendant. | **Case No. 1:15-cv-00203-EPG**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.   INTRODUCTION**

Plaintiff, Elvira Hernandez ("Plaintiff"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[1] Upon a review of the administrative record, the Court finds the ALJ's decision is supported by substantial evidence in the record as a whole. Accordingly, this Court affirms the agency's determination to deny benefits and denies Plaintiff's appeal.

///

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Doc. 5 and 6).

## II. BACKGROUND AND PRIOR PROCEEDINGS

Plaintiff filed an application for DIB in August 2011, alleging a disability onset date of January 26, 2011. Her application was denied initially in December 2011 and on reconsideration in July 2012. AR 84; 92.[2] A hearing was conducted before Administrative Law Judge ("ALJ") John Cusker on June 26, 2013. AR 25-48. On October 28, 2013, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 9-20. Plaintiff filed an appeal of the decision with the Appeals Council. AR 5-8. The Appeals Council denied her appeal, rendering the order the final decision of the Commissioner. AR 1-4.

Plaintiff now challenges that decision, arguing that the ALJ failed to properly assess her hand limitations due to adverse credibility findings. (Doc. 10, pgs. 8-13). Plaintiff argues that the Court should reverse and remand with instructions to award benefits. In the alternative, the case should be remanded for further administrative proceedings. In opposition, Defendant argues that the ALJ's adverse credibility findings are supported by substantial evidence. (Doc. 12, pgs. 5-9).

### A. Scope of Review

As a preliminary matter, although the heading of the argument section in Plaintiff's brief is that "the ALJ failed to properly assess her hand limitations that preclude her past relevant work" (Doc. 10, pg. 8 lines 9-11), the focus of her argument in the opening brief and in the reply is that the ALJ's credibility determination was improper. (Doc. 10, pgs. 8-14). Plaintiff argues that the ALJ improperly construed the medical evidence in his credibility analysis and did not consider the opinions of Dr. Bernstein, her treating physician. However, the ALJ gave little weight to Dr. Bernstein, Plaintiff's treating physician, and gave more weight to Dr. Van Kirk, the consultative examiner, and non-examining physicians, Dr. Khong and Dr. Frye – all three of whom determined that Plaintiff could perform light work without manipulative limitations. AR 17-18; 53-54; 282; 303. Plaintiff has not raised an argument in her brief that the weight given to these doctors is improper, and therefore has waived this argument. *See Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (finding that party had forfeited issue on appeal because it failed to provide an analysis of the issue: "Beyond its bold assertion,

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[plaintiff] provides little if any analysis to assist the court in evaluating its legal challenge" and "we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief"), citing *DARE America v. Rolling Stone Magazine,* 270 F.3d 793, 793 (9th Cir. 2001) (a "bare assertion of an issue does not preserve a claim") (citations omitted); *Hibbs v. Dep't of Human Resources*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding argument too undeveloped to be capable of assessment).

The Court finds that the ALJ's evaluation of the medical evidence was proper as he gave specific and legitimate reasons for rejecting Plaintiff's treating physician opinion.[3] Moreover, Plaintiff's reliance on her physical therapist's opinions are not persuasive since the ALJ properly noted that physical therapists are not acceptable medical sources. AR 18.

**B. Plaintiff's Testimony**

The hearing was held in Fresno, California. AR 25. Plaintiff was represented by her attorney Robert Ishikawa. AR 25. Plaintiff and a vocational expert, Thomas Dachelet, testified. AR 25-48. Plaintiff was 60 years old at the time of the hearing. AR 29. She attended high school up until ninth grade. AR 30. Plaintiff has worked as a dental assistant since 1979, taking a four-month course to become a registered dental assistant. AR 30.

Plaintiff testified that the strength in her hands, numbness in her leg, and the pain in her back limit her ability to work. AR 30. She is ambidextrous. AR 33. Plaintiff had carpal tunnel syndrome develop in her left hand in 2007 and in her right hand in 2010. AR 33. At the time of the hearing, she had been released from her treating physician, seeing him only when needed. AR 32. She has not had surgery for her carpal tunnel syndrome and does not receive on-going treatment for her impairments other than a massage about every two months from a physical

---

[3] The ALJ rejected Dr. Bernstein's opinion based on the following reasons:

… Dr. Bernstein's [opinions] impinge on an issue reserved for the Commissioner, and as such, are not entitled to any special weight. His opinions are not consistent with the objective findings noted above that show only mild signs of carpel tunel symdrome. His first opinion suggests only temporary impairment with a need for only minimal treatment. His second opinion appears to rely heavily on subjective statements made by the claimant, which I do not find fully credible. It also reflects on an opinion in terms of the claimant's past relevant work as she described performing it. Hence, these statements are inadequate to establish disability under the Social Security Act. Further, both opinions are inconsistent with activities actually performed by the claimant, including grasping handlebars of a bicycle and preparing meals. Therefore, I accord Dr. Bernstein's opinions little weight. AR 17.

3

therapist. AR 31-32. She wears wrist braces at night and sometimes during the day, and also uses hot and cold packs to reduce the swelling. AR 40-41. She will not take inflammatory medication due to the removal of one of her kidneys. AR 32; 41-42. Plaintiff settled a workers' compensation claim for her carpal tunnel syndrome in 2012 for $5,000. AR 31;148.

In addition to her carpal tunnel syndrome, Plaintiff's arthritis in her feet began to bother her about six months ago. Since that time, she can only stand for an hour and walk a quarter of a mile. AR 33-34; 36-37. She is unable to sit longer than an hour due to numbness on her left side. AR 34. However, six months ago, she could stand for two hours "easily without pain" and walk two miles. AR 36-37; 39. Plaintiff also testified that two years ago, she was unable to stand for an hour without pain. AR 39.

Plaintiff lives with her husband and adult daughter. AR 35. She has trouble sleeping at night and has constant pain in her wrists. AR 40. Plaintiff reports spending most of the day sitting, laying down, and watching television. AR 36; 41. She is able to bath and dress herself, sometimes needing assistance with buttons. AR 36; 41. She is only able to do one load of laundry daily and make herself a simple breakfast and lunch. She is able to scrub toilets monthly. AR 35. She is able to ride her bike once a month for about one mile. AR 35-36. She has a driver's license, but only drives in case of an emergency due to the pain in her left leg and rib cage, and the pain in her fingers from gripping the steering wheel. AR 29; 37. She is no longer able to make herself dinner, do most household chores, or yard work. AR 36. However, six months ago, she was able to do all of her household chores including gardening and yard work, i.e. watering plants. AR 36.

**C. Medical Record**

The entire medical record was reviewed by the Court. As previously noted, Plaintiff did not challenge the ALJ assessment of the medical opinions. As such, the medical evidence is summarized below as it relates to the issues raised in this appeal.

*i*. *Treating Physician-Kenneth Bernstein, M.D.*

Plaintiff received treatment from Dr. Bernstein at Darin M. Camarena Health Centers, Inc. on January 26, 2011. AR 262-263. Dr. Bernstein noted Tinel's signs were positive and tenderness on palpation of canal of Guyon for both right and left wrists. He assessed the Plaintiff as suffering

from carpal tunnel syndrome bilaterally. AR 263.

On February 9, 2011, Dr. Bernstein noted that an MRI shows multi-level cervical spine pathology/degenerative changes, and an EMG was also abnormal with changes indicating neuropathy. He did not expect Plaintiff to undergo surgery and he anticipated releasing her to regular work in June 2011. AR 264-266; 325.

On August 8, 2011, Dr. Bernstein assessed Plaintiff as having Tenosynovitis of the hand/wrist, carpal tunnel syndrome, and lower-back syndrome with radiculopathy. AR 268. An MRI of the lumbar spine dated August 30, 2011, revealed mild disk bulges at L1-2, L3-4 and L5-S1. AR 269.

On September 19, 2011, Dr. Bernstein noted Plaintiff had been granted total disability and was no longer on workers' compensation due to a settlement. At that time, Plaintiff had elected for non-surgical treatment and was using topical gel instead of nonsteroidal anti-inflammatory drugs due to renal concerns. AR 271. Dr. Bernstein also noted that physical therapy had been tried and Plaintiff attempted to return to work, but was unable to function as a dental assistant because she could not grasp the instruments. AR 272.

Plaintiff was referred to undergo three extracorporeal shockwave treatments of 2000 volts each. AR 220-237. Subsequent to the hearing, Plaintiff was seen by Martha Ramos-Fraga, PA-C at Camarena Health on July 29, 2013. AR 344-346. The examination revealed Plaintiff's neck, gait and stance were normal and ambulation was not limited. AR 345. There was swelling of the wrist and tenderness on palpation of the wrist. AR 345. Plaintiff was also referred to a physical therapist who reported that she exhibited the ability to lift up to 10 pounds, flexibility and mobility within normal limits, and acceptable endurance. AR 351. The physical therapist opined Plaintiff was incapable of performing even sedentary exertion and noted that grip and pinch strength in both upper extremities was significantly limited. AR 351.

### ii. *Workers' Compensation Physician-Surendra Patel, M.D.*

On March 11, 2011, Plaintiff complained of neck pain and pain and numbness in her left wrist/hand. Dr. Patel prescribed physiotherapy and suggested Plaintiff remain off work for 45 days. AR 257-258. An MRI of Plaintiff's lumbar spine dated April 4, 2011 revealed L3-4 facet

arthropathy, L5-S1 2.3 MM disc protrusion, facet hypertrophy producing bilateral neuroforaminal narrowing, and L4-5 bilateral facet arthropathy. AR 246-247. No other significant findings were noted. AR 247.

MRIs of Plaintiff's left wrist and left hand performed in April 2011, showed a small synovial versus a ganglion cyst ventral to the radioscaphoid joint (AR 249), mild fourth and fifth metacarpal phalangeal joint effusions, and intraosseous ganglion cyst within the third metacarpal head. AR 253. The triangular fibrocartilage complex (TFCC) was intact and did not demonstrate any abnormal signal. AR 249. Similarly, the median nerve was not thickened and did not demonstrate any abnormal signal. AR 249.

On April 8, 2011, Plaintiff complained of neck and wrist pain. Dr. Patel reported objective findings of decreased range of motion in the cervical spine and left wrist, decreased grip strength, numbness/tingling and weakness. AR 245. On April 15, 2011 and May 26, 2011, Plaintiff complained of neck pain, lower back pain and wrist/hand pain. After each visit, Dr. Patel suggested Plaintiff remain off work for 45 days. AR 240-242.

An electrodiagnostic study dated April 23, 2011, showed mild bilateral carpal tunnel syndrome with no evidence of cervical radiculopathy, or any other peripheral nerve compression. AR 216. The study showed full range of motion of the cervical spine, tenderness of the left wrist and elbow, decreased bilateral upper extremities strength, bilateral Tinel's, and carpal tunnel compression. AR 219. Phalen's tests were equivocal for the left wrist greater than right. Further, the study showed no atrophy of the upper extremity muscles, normal reflexes and tone, and no sensory deficits of the upper extremities. AR 219.

*iii. Opinion Evidence*

*Dale H. Van Kirk, M.D.-Consultative Examiner*

Dr. Van Kirk performed a comprehensive orthopedic evaluation of the Plaintiff on October 22, 2011. AR 279. Plaintiff had a full range of motion without pain in her hip, knees, ankles, elbows, and fingers/thumb. AR 281. Dr. Van Kirk noted Plaintiff had normal range of motion throughout the wrist joints with no sign of numbness or tingling in the hands or arms. He did note slight pain over the distal radius at the right wrist. AR 281. Tinel's test was positive for irritability

of the median nerve at the carpal tunnel on the right side and negative for the left side. AR 281. Plaintiff exhibited normal gait, satisfactory tandem walking, negative straight leg raising, and nearly full range of motion with the neck and lumbar spine. AR 281-282. Dr. Van Kirk noted Plaintiff has a "rather peculiar" left-sided hemi-hypoesthesia on the whole left side of her body. AR 282.

Dr. Van Kirk opined that Plaintiff should be able to stand and/or walk cumulatively for six hours out of an eight-hour day with no sitting limitations. He further opined she could lift and carry twenty pounds occasionally and ten pounds frequently, but is limited to only occasional postural activities because of residual pain in the neck area with radiation down the left arm, as well as lower back with radiation down the left leg. AR 282. He further noted Plaintiff had no manipulative limitations. AR 282. Dr. Van Kirk also recommended Plaintiff avoid cold and damp environments. AR 282.

*Vivienne J. Kattapong, M.D., Non-examining State Agency Medical Consultant*

Dr. Kattapong reviewed Plaintiff's medical record on November 21, 2011. She opined that Plaintiff's functional allegations are partially credible in that Plaintiff appears to engage in exam embellishment as evidenced by Plaintiff's spine x-ray indicating minimal findings despite functional allegations. AR 53.

*A. Khong, M.D., Non-examining State Agency Medical Consultant*

Dr. Khong reviewed Plaintiff's medical record on December 1, 2011 to provide a second opinion noting that Plaintiff chose to settle her workman's compensation claim rather than seek on-going treatment and opted for non-surgical treatment. AR 53. Dr. Khong opined that this behavior, the results of the EMG, which indicates only mild carpal tunnel syndrome, the results of the lumber spine MRI, which indicates only mild disc bulging, and Plaintiff's vague and all-inclusive symptoms suggest symptom magnification. AR 53. Dr. Khong recommended light work with no manipulation limitations as opined by Dr. Van Kirk's assessment. AR 54.

*P. Frye, M.D., Non-examining State Agency Medical Consultant*

Dr. Frye reviewed Plaintiff's medical record on July 6, 2012 offering a third opinion as to Plaintiff's credibility. He affirmed Dr. Khong's report of embellishment with respect to reported

symptoms. AR 303. He also found Plaintiff could perform light work.  AR 303.

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1502(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.920(a)(4) and 404.1502(a)(4).  The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 416.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine:  (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his or her past relevant work,[5] and (5) whether the claimant had the ability to perform

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 416.920(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

other jobs existing in significant numbers at the regional and national level.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 19.  In particular, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. AR 14. Further, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 26, 2011, the alleged onset date. AR 14. The ALJ identified arthritis, carpal tunnel syndrome, and musculoligamentous sprain/strain of the cervical and lumbar spine as severe impairments. AR 14.  The ALJ also determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 15.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform light work. Specifically, the ALJ found that Plaintiff can sit, stand and/or walk for six hours in an eight hour workday, and can occasionally bend, stoop, crouch, crawl, kneel, climb, and push and pull hand and foot controls. He imposed no fine or gross manipulative limitations. He also determined Plaintiff must avoid exposure to cold and damp environments. AR 15. Based on this RFC, the ALJ found that Plaintiff could perform her past relevant work as a dental assistant. AR 19.

**IV. STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which,

considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## V. DISCUSSION

### The ALJ's Credibility Determination was Proper.

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for his adverse credibility findings. (Doc. 10.) Specifically, Plaintiff contends the ALJ failed to properly assess her hand limitations, which preclude her past relevant work. In opposition, the Commissioner asserts that the ALJ provided substantial evidence in support of his adverse credibility findings. (Doc. 12.) A review of the record reveals that contrary to plaintiff's assertions, the ALJ provided clear and specific reasons which are supported by the record as a whole for his credibility determinations and therefore properly assessed Plaintiff's hand limitations.

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.; Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."). Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and 3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be

relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, following consideration of the evidence and an in-person hearing, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 16. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-82.

As noted above, because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown – Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

The ALJ found Plaintiff's allegations only partially credible because: (1) her level of activity is inconsistent with her allegations; (2) her reported loss of function is not supported by the medical evidence; (3) there was evidence of symptom embellishment; and (4) Plaintiff had a limited treatment history including her use of only over-the counter medication, physical therapy, and her occasional use of wrist braces. AR 16. A review of the record reveals that the reasons the ALJ relied upon in discrediting Plaintiff's symptoms are clear and convincing reasons that are supported by substantial evidence.

First, the ALJ determined Plaintiff's level of activity was inconsistent with her allegations, citing the following reasons:

> [Plaintiff's] level of activity is inconsistent with her allegations. She reports she can currently walk a quarter of a mile, stand for 1 hour, and sit for 1 hour at a time. However, she reported she was more active about 6 months ago. At that time, she could walk 2 miles and stand for 2 hours at a time. She is capable of dressing and bathing herself, preparing simple meals such as sandwiches, washing

11

>laundry, cleaning the toilet, and riding a bicycle for 15 to 20 minutes at a time. Six months ago, she was able to water plants, garden, do yard work, and do more housework. The claimant is ambidextrous, and can perform tasks with her left hand.

AR 16 (citations omitted).

Plaintiff argues that the ALJ improperly considered her ability to perform certain daily activities to discredit her testimony, but this is not the ALJ's focus. Instead, he notes that Plaintiff stated her current daily activities are significantly limited – she can only sit and stand one hour at a time, and she is able to complete limited chores around the house.  AR 33-34; 35-36  However, Plaintiff reported that six months ago, (which is after she filed her disability application), she was able to walk two miles, stand for two hours and perform all household chores including doing yard work, i.e. watering plants. AR 16; 36; 37.  Thus, Plaintiff's reports of her activities are inconsistent and appear exaggerated because even after filing for disability, she was able to walk two miles and perform her household chores.  There is nothing in the medical evidence to suggest a reason for Plaintiff's conflicting allegations.  Contradictions in the ability to perform activities of daily living are a valid consideration when evaluating a claimants' credibility.  *See Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly determined that the claimant's daily activities "did not suggest [Plaintiff] could return to his old job at Cummins, but . . . did suggest that [Plaintiff's] later claims about the severity of his limitations were exaggerated."); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[E]ven where [the daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Thomas*, 278 F. 3d at 959 ([A] claimant's "ability to perform various household chores such as cooking, laundry, washing dishes and shopping," among other factors, bolstered "the ALJ's negative conclusions about [her] veracity.").

Second, the ALJ determined the objective medical evidence was inconsistent with Plaintiff's reported loss of function. The ALJ cites to specific evidence in the medical record to support this conclusion.  For example, he notes the following: Plaintiff alleged bilateral hand and wrist pain and numbness. However, an electrodiagnostic study showed "only mild carpal tunnel

with no evidence of cervical radiculopathy or other peripheral nerve compression." AR 16; 216. Further, an MRI revealed only "small synovial versus ganglion cyst and mild 4th and 5th phalangeal joint effusions." AR 16; 249-255 (citations omitted). A physical examination "revealed tenderness of the left wrist and left elbow with decreased upper extremity strength bilaterally…[and] equivocal left greater than right bilateral Tinel's, Carpal Tunnel Compression, and Phalen's Tests. However, [Plaintiff] exhibited no upper extremity muscle atrophy, normal reflexes and tone and no sensory deficits of the upper extremities." AR 16; 216 (citations omitted). Moreover, a "comprehensive consultative examination…noted normal range of motion throughout the wrist joints with no signs of numbness or tingling in the hands or arms." AR 16; 281. Finally, Drs. Khong and Frye both concurred that no manipulative limitations were necessary given the EMG showed no significant motor problem and signs of only mild carpel tunnel syndrome. AR 17, 54, 303.

Plaintiff also alleged back pain and problems bending. However, the ALJ noted that the medical records show only "mild disc bulging at L1-S1 and L3-4 facet arthropathy producing bilateral neuroforaminal narrowing and L4-5 bilateral facet arthropathy." AR 17; 246-247; 269-270. Moreover, Plaintiff exhibited "full range of motion of the cervical spine" at a physical examination and "normal gait, satisfactory tandem and heal-toe walking, negative straight leg raising, and nearly full range of motion with neck and lumbar spine" at the consultative examination. AR 17; 281.

When noting these inconsistencies, the ALJ referenced the opinions of Dr. Khong and Dr. Frye who found that the inconsistencies between the medical evidence, the limited treatment Plaintiff received, and her reported symptoms suggested that Plaintiff was embellishing her reports of pain. AR 18, 53, 303.  Specifically, Dr. Frye noted that, "Plaintiff's reports of left sided hypoesthesia from the face down to her left elbow is an unusual clinical finding typically seen only in cases of thalamic strokes." Because there is no such history here, the symptom is suggestive of symptom magnification.  AR 53. A third doctor, Dr. Kattapong, also found exam embellishment. AR 53.  These inconsistencies between the record and medical evidence support a rejection of a claimant's credibility. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

13

Moreover, the Ninth Circuit has consistently held that an ALJ properly discredits a claimant's subjective testimony in light of evidence they have exaggerated their symptoms. *Turner v. Commissioner of Social Sec.,* 613 F.3d 1217, 12225 (9th Cir. 2010); *Thomas*, 278 F. 3d at 960; *Tonapetyan v. Halter*, 242 F. 3d 1144, 1148 (9th Cir. 2001).

Finally, the ALJ noted that Plaintiff's use of only over-the-counter medication and her limited treatment history were inconsistent with her allegations. Specifically, the ALJ referenced Plaintiff's treatment by a physical therapist and her limited use of a wrist brace. AR 16. Also, Plaintiff discussed both surgical and non-surgical treatment with her treating physician and elected not to have surgery, which Dr. Khong notes "erodes credibility." AR 53, 271. Although Plaintiff argues her use of over the counter drugs is because she only has one kidney, there is evidence in the record that prior doctors considered neuroleptic or narcotic pain medication. However, there is no evidence that Plaintiff explored that option. AR 320. Plaintiff's choice of conservative treatments can serve as a basis for an adverse credibility determination. *See* 20 C.F.R. § 404.1529(c)(3)(v) (an ALJ may consider the conservative nature of claimant's treatment); *Johnson,* 60 F.3d at 1434 (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations).

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not credible. Here, the ALJ clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints. *Brown-Hunter,* 806 F. 3d at 493; *Lester,* 81 F.3d at 834.  It is not the role of the Court to re-determine Plaintiff's credibility *de novo*.  If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). Accordingly, the ALJ's credibility determination was proper.

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Elvira Hernandez.

IT IS SO ORDERED.

Dated:  **June 9, 2016**                              /s/ Erica P. Grosjean
                                                               UNITED STATES MAGISTRATE JUDGE